IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CONNIE BRUNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:20CV721 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Connie Brunson ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on February 20, 2018, alleging a disability onset date of January 15, 2013. (Tr. at 10, 168-71.)[2] Her claim was denied initially (Tr. at 66-81, 98-101), and that determination was upheld on reconsideration (Tr. at 82-97,

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #11].

103-06). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 107.) Plaintiff attended the subsequent hearing on October 4, 2019, at which both Plaintiff and an impartial vocational expert appeared and testified and during which Plaintiff was represented by an attorney. (Tr. at 10.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act through December 31, 2018, which was her date last insured. (Tr. at 25.) On June 8, 2020, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" from her alleged onset of January 15, 2013, through her date last insured of December 31, 2018. Plaintiff therefore met her burden at step one of the sequential evaluation process. (Tr. at 12.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> schwannoma at left C3-C4; degenerative disc disease ("DDD"); and arthritis of the left knee[.]

(Tr. at 12.) The ALJ next found at step three that none of Plaintiff's impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13-14.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, through her date last insured, Plaintiff had the RFC to perform light work with the following, non-exertional limitations:

> [Plaintiff] can frequently climb, balance, stoop, kneel, crouch, and crawl; and can frequently, but not constantly, reach with her left, non-dominant upper extremity.

(Tr. at 14.) At step four of the sequential analysis, the ALJ found, based on the testimony of the vocational expert, that Plaintiff's past relevant work as child welfare case worker did not exceed her RFC. (Tr. at 24.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now challenges the ALJ's findings in two respects. First, she contends that the ALJ erred by failing to properly evaluate Plaintiff's back impairment under 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04A (hereinafter "Listing 1.04A"). Second, Plaintiff argues that the ALJ failed to conduct a proper function-by-function analysis when assessing her RFC. Because Plaintiff's challenge to the ALJ's listing analysis requires remand, the Court need not consider Plaintiff's additional contention at this time.

Although an ALJ is not required to explicitly identify and discuss every possible listing, she is compelled to provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion."

6

Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)). However, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id. If the decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295. The Social Security Administration has incorporated Radford's holding into Acquiescence Ruling 15-1(4).

Here, the ALJ acknowledged that there was sufficient evidence in the record to trigger the potential applicability of Listing 1.04A and included a brief analysis in her decision. The remaining question under Radford is whether the ALJ's explanation and analysis is sufficient to allow judicial review of her step three determination as to that Listing.

A plaintiff meets Listing 1.04A only if she meets three requirements. She must first show that she suffers from a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. Second, she must demonstrate that the above spinal condition results in compromise of a nerve root (including the cauda equina) or the spinal cord, and third, she must show that she meets the additional requirements of paragraph A of the Listing:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

Id.

In the present case, at the hearing before the ALJ, Plaintiff's attorney specifically presented Plaintiff's contention that Plaintiff met Listing 1.04A:

> ALJ: . . . . Mr. Nelson, would you like to make an opening statement?
> ATTY: Yes, Your Honor. I believe Ms. Brunson meets the criteria for Listing 1.04. In November of 2016, she went to the Spine and Laser Institute and had a thorough examination of her tumor, and the examination revealed a compromise of the left C5 nerve root with also a compression of the C4 nerve root and upon examination, she had limited hyperextension of the cervical region, painful lateral flexion, and also, she exhibited . . . weakness in her left arm and shoulder region, and that meets the criteria for 1.04.

(Tr. at 45.) In the decision, the ALJ acknowledged at step three of the sequential analysis that Plaintiff's spine impairment arguably met the requirements of Listing 1.04A, but nevertheless concluded that Plaintiff failed to meet Listing 1.04A because the record did not "establish an inability to effectively ambulate." (Tr. at 14.) Specifically, the ALJ found that:

> The claimant's degenerative disc disease does not meet or medically equal listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight let raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication. The [ALJ] has also considered Acquiescence Ruling 15-1(4) which addresses the ruling in Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), and determined that the medical evidence of record does not indicate that all of the medical criteria in Paragraph A of listing 1.04 were present within a continuous 12-month period (or are expected to be present.) <u>Specifically, while the record indicates nerve root compression and muscle symptoms, it does not establish an inability to effectively ambulate on the claimant's part.</u>

(Tr. at 14 (emphasis added).) Thus, in finding that Plaintiff did not meet Listing 1.04A, the ALJ relied solely on the finding that the record "does not establish an inability to effectively ambulate." (Tr. at 14). However, Plaintiff alleged that she met Listing 1.04A because she

8

suffered from nerve root compression in her cervical spine, which affected her upper extremity, not her lower extremities. Thus, it is not clear how the ALJ's determination regarding Plaintiff's ability to ambulate would affect or impact the applicability of Listing 1.04A to Plaintiff's cervical spinal disorder. Plaintiff notes that, because "her condition is affecting the cervical spine, it is not necessary to demonstrate a positive straight leg raise in this matter," consistent with the specific language in the listings. (Pl.'s Br. [Doc. #17] at 5.) Plaintiff also cites numerous treatment notes to support her contention that she potentially met the additional requirements of Listing 1.04A during the time period at issue, with at least some evidence supporting that she met all of these requirements within the 12-month time frame identified in Radford. (See Pl.'s Br. at 5-7.)

Defendant counters that the symptoms cited by Plaintiff stem, not from her degenerative disc disease, but from her schwannoma, which also impacts her cervical spine. (Def. Br. [Doc. #19] at 12.) As to this contention, if the ALJ had made this finding, that could have provided a basis for concluding that Listing 1.04A did not apply. However, the ALJ specifically considered Plaintiff's spine impairment under Listing 1.04A as set out above, and as part of that discussion considered Plaintiff's degenerative disc disease and found that the "record indicates nerve root compression." (Tr. at 14; see also Tr. at 279 (November 2016 x-ray reflecting mild to moderate degenerative disc disease at C5-6.)) The ALJ's decision does reflect that at step three, the ALJ also separately considered schwannoma against the requirements of Listing 11.08, and found that the symptoms from Plaintiff's impairment were not severe enough to meet part A, B, or C of that listing. (Tr. at 14.) However, the ALJ did not further specify which symptoms she attributed to each of Plaintiff's cervical spine

9

impairments, what evidence supports such an attribution, or whether parsing Plaintiff's symptoms between two closely related impairments is even possible. Thus, to accept Defendant's contention would essentially require the Court to not only rely on reasoning that is not set out by the ALJ, but to actually disregard the findings that the ALJ did make with respect to Listing 1.04A.

Similarly, Defendant contends that Plaintiff does not meet Listing 1.04A because she cannot demonstrate "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." (Def. Br. at 13.) In support of this assertion, Defendant cites various treatment notes reflecting normal muscle strength and sensation. (Def. Br. at 13-14.) Again, if the ALJ had relied on such a finding, it could have provided a basis to support her determination that Listing 1.04A was not met. However, the ALJ did not include such a finding in the listing analysis, and even more importantly, the ALJ specifically found that the record did indicate the requisite "muscle symptoms." (Tr. at 14.) Thus, to accept Defendant's contention would again require the Court to not only rely on reasoning that is not set out by the ALJ, but to actually disregard the findings that the ALJ did make with respect to Listing 1.04A.

Finally, Defendant contends that "[e]ven if the ALJ's analysis was insufficient, Plaintiff's medical records indicate that any error in not providing a more extensive discussion was entirely harmless because the record demonstrates that she does not meet Listing 1.04A." (Def. Br. at 14.) Defendant also notes that during the time period at issue, Plaintiff attended and graduated from North Carolina Central University with a Master's Degree in social work, and Defendant further notes that the record otherwise support's the ALJ's ultimate

determination as to Plaintiff's ability to return to her past work. (Def. Br. at 4; Tr. at 48, 775.) The Court is sympathetic to this contention and agrees that it is generally advisable to avoid unnecessary, futile remands.[5] However, the ALJ must resolve the factual issues in the medical record, and here the ALJ's decision included potential findings as to Listing 1.04, including that as to Plaintiff's degenerative disc disease, "the record indicates nerve root compression and muscle symptoms." (Tr. at 14.) Plaintiff also cites to portions of the record to support this aspect of the ALJ's determination and the possible applicability of Listing 1.04A, which was Plaintiff's theory of the case even at the hearing with the ALJ.

A conflicting medical record paired with an ALJ's failure to fully explain her reasoning at step three generally requires remand under Radford. See 734 F.3d at 296 ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' Hancock, 667 F.3d at 472 (alteration in original), it is also not our province—nor the province of the district court—to engage in these exercises in the first instance."). Moreover, as set out by this District in Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *3 (M.D.N.C. March 25, 2014), the Court's "[r]eview of the ALJs ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering

---

[5] This may be even more true in the present case, where the Listings have been amended effective April 2, 2021. Specifically, the SSA recodified Listing 1.04A as Listing 1.15. In doing so, the agency clarified its requirements for meeting a spinal disorder listing, in part by setting out additional criteria claimants must demonstrate to show disability at step three of the sequential analysis. See 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020); compare 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04(A), with 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.15 (effective April 2, 2021). The new listing applies to both new applications filed on or after April 2, 2021, as well as to claims that are pending with the SSA on or after that date. However, the Court must consider the present case based on the version of the regulations in effect at the time of the ALJ's decision, and any consideration of whether the new Listings could or should apply on remand would be for the ALJ to consider in the first instance. 85 Fed. Reg. 78164-01, n.2 ("[W]e will use these final rules on and after their effective date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" Id. at *1 (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)).

Here, it is for the ALJ to consider the Listings and to set out a sufficient basis and explanation to allow for meaningful judicial review. In the current decision, as in Radford, "insufficient legal analysis makes in impossible for [the] reviewing court to evaluate whether substantial evidence support the ALJ's findings" as to Listing 1.04A. Radford, 734 F.3d at 295. Therefore, remand is required.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #18] should be DENIED, and Plaintiff's Motion for Judgment Reversing Commissioner [Doc. #16] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 17th day of February, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge